# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CT-01571-SCT

*CHRIS HARRELL a/k/a CHRISTOPHER HARRELL*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/05/2010 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 01/16/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     A Hinds County jury convicted Christopher Harrell of two crimes: capital murder with the underlying felony of robbery and felon in possession of a firearm. The Hinds County Circuit Court sentenced Harrell to life without the possibility of parole pursuant to the former and ten years, to run concurrently with the life sentence, for the latter.

¶2.    The Court of Appeals affirmed both convictions, and we granted Harrell's petition for a writ of certiorari. Harrell raised four issues on direct appeal, but today we address two: (1) whether the circuit court erred in not instructing the jury on the elements of the underlying felony of robbery and (2) whether the circuit court erred in granting the State's requested flight instruction. We hold that the failure to instruct the jury as to the elements of the charged crime deprived Harrell of due process in the form of his right to a jury trial as guaranteed by the Mississippi Constution, and that the circuit court did not err in granting the flight instruction. Accordingly, we affirm the trial court and the Court of Appeals as to the conviction of felon in possession of a firearm in part but reverse the capital murder conviction, and remand the case to the Circuit Court of Hinds County for a new trial in the murder indictment.

**FACTS**

¶3.    On the afternoon of April 6, 2008, Frank Damico dropped off Leroy McGowan and his sister at the V.A. Hospital in Jackson, Mississippi, in Hinds County. McGowan had lent Damico his blue Mercury Grand Marquis sedan. Damico was supposed to pick them up a few hours later, but when he did not return, they called the police. On April 9, 2008, the blue Mercury was discovered behind a church in Holmes County, Mississippi. On April 15, 2008, Damico's body was discovered in a ditch a few miles from the church.

¶4.    According to the record below, investigators determined that Harrell, who lived with his mother in Holmes County, had escaped to Jackson in March 2008 to avoid arrest for an aggravated assault. While in Jackson, Harrell stayed with Damico's girlfriend, Rita Faye Landrum. Landrum testified that Harrell had a gun. She testified that Damico had visited on

2

the afternoon of April 6, and Harrell had asked her to ask Damico for a ride to the Exxon station. Damico agreed and left with Harrell. Landrum never saw either of them again.

¶5.    Harrell's mother, Martha Engelmann, testified that Harrell had called on April 8, 2008, and announced that he was coming home. She immediately called the police, who were looking for Harrell. Harrell was arrested that night in his bedroom. A nine millimeter pistol and the keys to the blue Mercury were beside him. The police found the blue Mercury in a church parking lot about a quarter mile from Engelmann's house. The lining in the trunk had been removed.

¶6.    Construction workers discovered Damico's body in a ditch on a secluded road in Holmes County on April 15, 2008. The pathologist, Dr. Stephen Hayne, determined that Damico had died from a single gunshot wound to the head that had fractured the jawbone. The fatal bullet had passed through the body and was not recovered.

¶7.    Harrell gave several statements to the authorities, which are relevant to the flight instruction issue. On April 9, 2008, before the discovery of Damico's body, he said that a man named Shorty had given him the car. On April 10, Harrell said he had been at "Frank's" house and that Damico had given him a ride to meet a man named Shorty. Harrell claimed that Shorty and Damico left in Damico's car, and Shorty returned alone. Then, Shorty gave Harrell the car. On May 8, Harrell said that he and Damico had met Shorty at a motel, then Damico and Shorty had left together. Shorty returned with Damico's body in the trunk and asked Harrell where he could dump the body. Harrell and Shorty drove to Holmes County. They were followed by an SUV driven by an unknown person. They drove to the church near Harrell's mother's house, where they instructed the SUV driver to wait while they

3

disposed of the body. At the ditch, Shorty removed the body from the trunk. Then they drove to the church near Harrell's mother's house, where Shorty gave Harrell the blue Mercury and left in the SUV.

¶8. On June 19, 2008, Harrell gave a statement to the Mississippi Bureau of Investigation claiming that he had driven Damico to see Shorty so that Damico could purchase drugs. Harrell said that they had met Shorty in the parking lot of a church in Jackson. According to Harrell, Damico and Shorty had begun to argue, and Shorty had shot Damico. Then, they drove to Holmes County, where Shorty removed the body. Harrell said that they drove to the church, where Shorty gave him the car and left in the SUV.

¶9. In Harrell's final interview on June 26, 2008, he said that Damico had not gone to buy drugs from Shorty, but that he had asked Damico for a ride to meet Shorty. Harrell said that they had met Shorty and the man with the SUV at a church in Jackson, not a motel. Shorty became angry and fearful that Damico was a police officer and shot him. Harrell helped put the body in the trunk, and they drove to Holmes County, trailed by the SUV. While the SUV waited at the church, Harrell and Shorty went to the secluded road and removed the body. Harrell said that, upon their return to the church, Shorty gave him the car and left in the SUV.

¶10. An inmate, Henry Peters, testified that he had been housed with Harrell at the Rankin County Correctional Facility in April 2008. Peters testified that he was a writ writer who assisted other inmates with legal issues. Peters said that Harrell had approached him for advice on a jurisdictional matter. According to Peters, Harrell had wanted the capital murder tried in the jurisdiction where it had occurred, which was Hinds County. Harrell told Peters that he had shot Damico "in the mouth," and that the bullet had exited the wound. Again,

4

according to Peters, Harrell further confessed that he then had put Damico's body in the trunk and had driven to Holmes County. Harrell explained that he was trying to blame someone else for the crime.

¶11. At the trial, Harrell's primary defense to capital murder was that Damico had been killed in Holmes County, not Hinds County. The jury found him guilty of capital murder and possession of a firearm by a convicted felon.

### DISCUSSION

I. THE FAILURE TO INSTRUCT A JURY AS TO ALL ELEMENTS OF THE CRIME CHARGED CONSTITUTES REVERSIBLE ERROR.

¶12. Harrell argues that his fundamental right to due process was violated because the trial court failed to instruct the jury on the elements of the underlying felony of robbery. Harrell was convicted of capital murder with the underlying felony of robbery under Mississippi Code Section 97-3-19(2)(e). That section provides:

> The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
>
> When done with or without any design to effect death, by any person engaged in the commission of the crime or rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies.

Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2006). Mississippi Code Section 97-3-73, defining the crime of robbery, provides: "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery." Miss. Code Ann. § 97-3-73 (Rev. 2006). The elements of robbery

5

include "(1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence." ***Goff v. State***, 14 So. 3d 625, 647 (Miss. 2009).

¶13.    The trial court gave the following elements instruction on capital murder:

> The Defendant, Christopher Harrell, has been charged in the indictment with the offense of Capital Murder in Count One. The court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that:
>
> 1. The Defendant, Christopher Harrell;
>
> 2. On or about April 6, 2008 in the First Judicial District of Hinds County, Mississippi
>
> 3. Did purposely, knowingly and feloniously did [sic] murder one Frank Damico, a human being
>
> 4. with deliberate design or while in the commission of an act eminently dangerous evincing a depraved heart, without authority of law;[1]
>
> 5. and not in necessary self defense
>
> 6. at a time when he [sic] the said Christopher Harrell was then and there engaged in the commission of the crime of robbery of the said Frank Damico
>
> then you shall find the defendant, guilty of Capital Murder in Count One.

The trial court did not give a separate instruction providing the elements of robbery. Thus, while the jury was instructed that it could find Harrell guilty of capital murder if it found

---

[1] We note that the capital-murder instruction incorrectly stated that the killing had to have been done with malice. There is no malice requirement for capital murder. *See* Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2006); ***Stevenson v. State***, 733 So. 2d 177, 186 (Miss. 1998). However, because the error favored Harrell by increasing the State's burden of proof, no reversible error occurred.

beyond a reasonable doubt that Harrell had killed Damico while engaged in the crime of robbery, the jury was not instructed on what acts constituted "robbery."

¶14. Harrell did not bring the omission to the attention of the trial court by objecting to the State's instruction or submitting an instruction on the elements of robbery. Nonetheless, the issue is not procedurally barred. The Court has rejected the application of a procedural bar when the trial court fails to instruct the jury on the elements of the underlying felony in a capital-murder trial. *Kolberg v. State*, 829 So. 2d 29, 46 (Miss. 2002); *Shaffer v. State*, 740 So. 2d 273, 282 (Miss. 1998); *Hunter v. State*, 684 So. 2d 625, 636 (Miss. 1996). It is the trial court's responsibility to assure that the jury is "fully and properly instructed on all issues of law relevant to the case." *Kolberg v. State*, 829 So. 2d 29, 46 (Miss. 2002). "There is no doubt that the trial court is ultimately responsible for rendering proper guidance to the jury via appropriately given jury instructions, even sua sponte." *Id.* at 45. We also have held that the State is responsible for making sure the jury is instructed on the essential elements of the crime. *Hunter v. State*, 684 So. 2d 625, 635 (Miss. 1996) (stating that "[i]t is rudimentary that the jury must be instructed regarding the elements of the crime with which the defendant is charged . . . even though the defendant did not present an acceptable instruction, the State was obligated to do so").

¶15. We now arrive at something of a crossroads. In *Kolberg*, we reaffirmed that the failure of the trial court to instruct a jury as to the elements of the underlying felony constitutes error, but for the first time we held the error to be subject to harmless error analysis. *Kolberg*, 829 So. 2d at 50-51 (¶ 40). We take the opportunity presented by the instant case to revisit our opinion in *Kolberg*.

7

¶16. Article III, Section 2, Clause 3 of the United States Constitution mandates a jury trial for all crimes except as may result in impeachment. U.S. Const. art. III, § 2. The Sixth Amendment to the Constitution of the United States provides, "In *all* criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI (emphasis added). Section 31 of the Constitution of the State of Mississippi states in even stronger language, "The right of trial by jury *shall remain inviolate*. . . ." Miss. Const. art. 3, § 31 (emphasis added).

¶17. In *Neder v. United States*, 527 U.S. 1 (1999), the Supreme Court of the United States held it to be harmless error when the defendant was found guilty of tax crimes despite the fact that the jury was not instructed on one element of the offense – the materiality of false statements made by the defendant. *Id.* at 6-7, 10. Justice Scalia dissented, as we discuss below. *Id.* at 30. The *Neder* Court spoke authoritatively regarding the right to a jury trial as provided in the federal Constitution. However, Mississippi has its own constitution, wherein the right to a trial by jury also is protected, and via language stronger than that found in its federal counterpart.

¶18. The idea that an accused's right to a trial by jury is less than absolute is relatively new. Prior to the 1999 *Neder* decision, the Fifth Circuit Court of Appeals held, "When the jury is not given an opportunity to decide a relevant factual question, it is not sufficient 'to urge that the record contains evidence that would support a finding of guilt even under a correct view of the law.'" *United States v. McClain*, 545 F.2d 988, 1003 (5th Cir. 1977) (quoting *United States v. Casale Car Leasing Inc.*, 385 F.2d 707, 712 (2d Cir. 1967)); *see also United States*

*v. Pelullo*, 14 F.3d 881, 890 (3d Cir. 1994) (holding collateral estoppel could not be used against a criminal defendant because it prevented the jury from determining guilt or innocence as to each element of the crime charged); *United States v. Goetz*, 746 F.2d 705, 708 (11th Cir. 1984) ("The rule is firmly established that the trial judge cannot direct a verdict in favor of the government for all or even one element of a crime."). In fact, prior to *Neder*, the United States Supreme Court itself consistently held that, when engaging in harmless error analysis, an appellate court may preserve, but not supplement, a jury's findings, and that in the context of a criminal case the court may not, if asked, hold that a jury would have found something it did not find. *Pope v. Illinois*, 481 U.S. 497, 509-510 (1987) (Stevens, J., dissenting) (citing *Jackson v. Virginia*, 443 U.S. 307, 320 n.14, (1979); *United Bhd. of Carpenters & Joinders of Am. v. United States*, 330 U.S. 395, 408-409 (1947); *Bollenbach v. United States*, 326 U.S. 607, 615 (1946)). Taking the strong historical precedent that directs against the *Neder* and *Kolberg* Courts allowing judges – rather than juries – to determine guilt under the rubric of harmless error together with the stronger wording of Section 31 of Mississippi's constitution, we now hold that the *Kolberg* Court's holding violates our state constitution and should be overruled to the extent that it allows appellate courts to engage in harmless error analysis when trial courts fail to instruct juries as to elements of the crime charged.

¶19. The *Kolberg* case was similar to the instant case. In *Kolberg*, the defendant had been convicted of capital murder with the underlying felony of child abuse; *Kolberg*, 829 So. 2d at 45 (¶ 22); here, Harrell stands convicted of capital murder with the underlying felony of robbery. In both cases, the trial court failed to instruct the jury on the elements of the

9

underlying felony, and in both cases, the defense failed to lodge a contemporaneous objection. *Kolberg*, 829 So. 2d at 45 (¶¶ 22, 23). In reaching its holding on the instant issue, the *Kolberg* Court discussed three cases it deemed critical: *Ballenger v. State*, 761 So. 2d 214 (Miss. 2000); *Shaffer v. State*, 740 So. 2d 273 (Miss. 1998); and *Hunter v. State*, 684 So. 2d 625 (Miss. 1996). The three cases lead inexorably to the conclusion that, prior to *Kolberg*, the failure to instruct a jury as to an element of the charged crime led to an automatic reversal and precluded any sort of harmless error analysis.

¶20. In *Hunter v. State*, the defendant stood convicted of capital murder with the underlying felony of robbery. *Hunter*, 684 So. 2d at 628. As in the case *sub judice* and in *Kolberg*, the trial court failed to instruct the jury on the elements of the underlying offense. *Id.* The defendant, Hunter, proposed a jury instruction on the elements of robbery, but the trial court refused the instruction. *Id.* at 634. We affirmed the refusal of Hunter's proposed instruction, describing it as long and confusing. *Id.* However, no other instruction on the elements of robbery was substituted for it, and the court never instructed the jury on the elements of robbery. *Id.* Accordingly, the *Hunter* Court considered whether the absence of any instruction on the elements of the underlying offense was error. *Id.* at 635. The *Hunter* Court held that, after the trial court refused the defendant's instruction, the State had a duty to make sure the court properly instructed the jury. *Hunter*, 684 So. 2d at 628. In support of its holding, the Court wrote, "A logical corollary of this principle is that, because the State *has to prove each element of the crime beyond a reasonable doubt*, then the State also has to ensure that the jury is properly instructed with regard to the elements of the crime." *Id.* at 635 (emphasis added). Later, the Court wrote, "Failure to submit to the jury the essential

10

elements of the crime is 'fundamental' error." *Id.* at 636. "Where the jury had incorrect or incomplete instructions regarding the law, our review task is nigh unto impossible and reversal is generally required." *Id.* at 636 (quoting *Henderson v. State*, 660 So. 2d 220, 222 (Miss. 1995)).

¶21.     *Shaffer v. State*, 740 So. 2d 273 (Miss.1998), involved a conviction for simple murder in which the court's jury instruction omitted the element of "evincing a depraved heart, regardless of human life." *Shaffer*, 740 So. 2d at 273, 282 (¶¶ 1, 31).  The defendant, Shaffer, failed to object to the instruction at trial. *Id.* at 282 (¶ 31).  The Court wrote that a "conviction is unenforceable where the jury does not find each element of the offense beyond a reasonable doubt. Where the jury is not even instructed on one of the vital elements of the offense, the conviction *must not survive* the scrutiny of this Court." *Id.* at 282 (¶ 32) (emphasis added); *see also Doby v. State*, 557 So. 2d 533, 540 (Miss. 1990); *Steele v. State*, 544 So. 2d 802, 808-09 (Miss. 1989).  "Instructing the jury on every element of the charged crime is so basic to our system of justice that it should be enforced by reversal *in every case* where inadequate instructions are given, *regardless of a failure to object* or making a different objection at trial." *Shaffer*, 740 So. 2d at 282 (¶ 31) (emphasis added).

¶22.     We cemented the pre-*Kolberg* rule, that the failure of a jury to find a criminal defendant guilty on each element of the charged crime led to mandatory reversal, in *Ballenger*, which came before the Court on a motion for post-conviction relief. *Ballenger*, 761 So. 2d at 214 (¶ 2).  A jury convicted Ballenger of capital murder with the underlying crime of robbery. *Id.* at 214 (¶ 1).  The trial court failed to instruct the jury on the elements of robbery. *Id.* at 216 (¶ 12).  Although we affirmed on Ballenger's direct appeal, holding

11

that Ballenger had failed to preserve the issue and, as a result, it was procedurally barred, *id.*, Ballenger's direct appeal predated our holdings in *Hunter* and *Shaffer*. *Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995). Upon consideration of the later-filed petition for post-conviction relief, the Court noted that *Hunter* and *Shaffer* required automatic reversal. *Id.* at 219 (¶ 21).

¶23. Pursuant to *Hunter*, *Shaffer*, and *Ballenger*, prior to *Kolberg*, when a person stood convicted without a jury having found him guilty of each element of the charged crime beyond a reasonable doubt because the jury did not receive instruction on each element, the error in failing to instruct was fundamental and required automatic reversal. The *Kolberg* Court, without discussion of the right to a jury trial guaranteed by Section 31 of our state constitution, effectively overruled *Hunter*, *Shaffer*, and *Ballenger*. We now question two aspects of the *Kolberg* opinion. First, it mistakenly relied on our decision in *Conley v. State*, 790 So. 2d 773, 793 (Miss. 2001), to reach the conclusion that Mississippi allowed harmless error analysis when a trial court provided incomplete instructions to a jury. Second, it failed to fully consider Section 31, including, as discussed below, when it chose to rely upon *Neder*.

¶24. In *Conley*, a jury convicted the defendant of capital murder; he received a sentence of life without parole. *Conley*, 790 So. 2d at 779 (¶ 1). The trial court denied Conley's request for a lesser-included-offense instruction for manslaughter. *Id.* at 792 (¶ 68). Instead, the trial court instructed the jury with a manslaughter instruction provided by the State, and the instruction given to the jury failed to properly define culpable negligence, which is an element of manslaughter. *Id.* at 792-793 (¶¶ 69-70). The *Conley* Court held that the error

12

was harmless and "did not contribute to the verdict as the jury unanimously agreed that Conley murdered [the victim] while engaged in the crime of kidnapping." *Id.* at 793 (¶ 72).

¶25. The difference between what happened in *Conley* on one hand and what happened in *Kolberg* on the other is of vital importance. In *Conley* – a case upon which we so heavily relied in *Kolberg* – the jury had in fact found Conley guilty of each and every element of capital murder, including the underlying crime of kidnapping. *Conley*, 790 So. 2d at 794 (¶ 76). Unlike today's case and *Kolberg*, the Court reached its decision without the need to find the defendant guilty of elements of a crime upon which the jury never deliberated and never rendered a decision. The objectionable jury instruction pertained to a lesser-included offense, not the crime of which the defendant was convicted. The *Conley* decision jives well with the principle that appellate courts may use harmless error to preserve, *but not supplement*, a jury's findings. *See Pope v. Illinois*, 481 U.S. 497, 509-510 (1987) (Stevens, J., dissenting). However, *Kolberg*, permitting appellate courts to supplement a jury's findings as to elements upon which the jury received no instruction but were at the same time essential to the verdict reached, does not.

¶26. The second point of concern with our opinion in *Kolberg* is that we reached its holding without a single citation to, and no discussion whatsoever of, Section 31 of the Constitution of the State of Mississippi. Again, Section 31 provides, " "The right of trial by jury *shall remain inviolate. . . .*" Miss. Const. art. 3, § 31 (emphasis added). One finds our opinions replete with admonishments that the word "shall" means mandatory, and that its use negates discretion. *See Young v. Smith*, 67 So. 3d 732, 739 (¶¶ 13-14) (Miss. 2011); *Madison HMA, Inc. v. St. Dominic-Jackson Mem'l Hosp.*, 35 So. 3d 1209, 1214 (¶ 14)

13

(Miss. 2010); ***Hill Bros. Const. & Eng'g Co., Inc. v. Mississippi Transp. Comm'n***, 909 So. 2d 58, 66 (¶ 34) (Miss. 2005); ***Ivy v. Harrington***, 644 So. 2d 1218, 1221 (Miss. 1994). Accordingly, Section 31 gives us no discretion, and in Mississippi, the right to a jury trial must remain inviolate.

¶27. Black's Law Dictionary defines inviolate, "[f]ree from violation; not broken, infringed, or impaired." *Black's Law Dictionary 904* (9th ed. 2009). Webster's definition is "1. free from violation, injury, desecration, or outrage. 2. undisturbed; untouched. 3. unbroken. 4. not infringed." *Random House Webster's Unabridged Dictionary 1004* (2nd ed. 2001). We do not know why the framers of Mississippi's constitution, having the United States Constitution as a model, chose the stronger wording of Section 31 over the language chosen by the framers of our federal constitution, but they did. We can reach no other conclusion than the following: a decision of the Mississippi Supreme Court rendering it harmless for a person in Mississippi to be convicted of a crime with the Court, rather than the jury, deciding the sufficiency of the evidence against the person impairs, infringes upon, violates, and renders broken the right to a jury trial. The ***Kolberg*** Court's reliance on ***Neder*** is misplaced because the United States Supreme Court in ***Neder*** relied on the less stringent language of the United States Constitution's two pronouncements regarding the mandatory nature of a jury trial, neither of which put the matter as strongly as does the Mississippi Constitution.

¶28. Certainly, "there is no such thing as a directed verdict for the prosecution in a criminal case." ***Fairchild v. State***, 459 So. 2d 793, 800-01 (Miss. 1984)). The result reached in ***Kolberg*** effectively does away with the prohibition against directed verdicts in favor of the

14

prosecution. Engaging in harmless error analysis here would mean determining Harrell's guilt without a jury ever deciding whether he committed a single element of the crime of robbery. What would happen if the jury in a criminal trial had not been instructed as to *any* element of the crime and rendered a conviction? Would we then weigh the evidence in a harmless error analysis? How many, or what percentage, of the elements of a crime need to be omitted before we invoke the prohibition against directed verdicts for the prosecution? Allowing harmless error analysis as to uninstructed elements of the charged crime opens the door to harmless error analysis should a trial court one day err and grant a directed verdict for the prosecution.

¶29. To borrow from Justice Scalia, when we as the Supreme Court of Mississippi make pronouncements about the right to a trial by jury, we are "operating upon the spinal column of American democracy." *Neder*, 527 U.S. at 30 (Scalia, J., dissenting). Justice Scalia's dissent continues as follows:

> William Blackstone, the Framers' accepted authority on English law and the English Constitution, described the right to trial by jury in criminal prosecutions as "the grand bulwark of [the Englishman's] liberties . . . . secured to him by the great charter." 4 W. Blackstone, Commentaries *349. One of the indictments of the Declaration of Independence against King George III was that he had "subject[ed] us to a Jurisdiction foreign to our Constitution, and unacknowledged by our Laws" in approving legislation "[f]or depriving us, in many Cases, of the Benefits of Trial by Jury." Alexander Hamilton wrote that "[t]he friends and adversaries of the plan of the convention, if they agree in nothing else, concur at least in the value they set upon the trial by jury: Or if there is any difference between them, it consists in this, the former regard it as a valuable safeguard to liberty, the latter represent it as the very palladium of free government." The Federalist No. 83, p. 426 (M. Beloff ed.1987). The right to trial by jury in criminal cases was the only guarantee common to the 12 state constitutions that predated the Constitutional Convention, and it has appeared in the constitution of every State to enter the Union thereafter. Alschuler & Deiss, A Brief History of the

Criminal Jury in the United States, 61 U. Chi. L. Rev. 867, 870, 875, n.44 (1994). By comparison, the right to counsel—deprivation of which we have also held to be structural error—is a Johnny-come-lately: Defense counsel did not become a regular fixture of the criminal trial until the mid-1800's. See W. Beaney, Right to Counsel in American Courts 226 (1955).

*Id.* at 30-31.

¶30.   So important is the right to a jury trial to our democratic form of government; so clear is the mandate from Section 31 of the Constitution of the State of Mississippi; that we overrule **Kolberg** to the extent that it provides harmless error analysis when the trial court fails to instruct a jury as to elements of a charged crime. We hold that it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element.

II.    WHETHER THE TRIAL COURT ERRONEOUSLY GRANTED THE STATE'S REQUEST FOR A FLIGHT INSTRUCTION.

¶31.   Over Harrell's objection, the trial court granted the flight instruction requested by the State. The instruction stated:

The Court instructs the Jury that flight is a circumstance from which in the absence of a reasonable explanation therefor, guilty knowledge and fear may be inferred. If you find from the evidence in this case, beyond a reasonable doubt that the defendant, Christopher Harrell did flee or go into hiding after killing Frank Damico, then the flight of Christopher Harrell is to be considered in connection with all other evidence in this case. You will determine from all the facts whether the flight was from a conscious sense of guilt or whether it was caused by other things, and give it such weight as you think it is entitled to in determining the guilt or innocence of Christopher Harrell.

Harrell argues that the trial court erred in granting a flight instruction.

¶32.   The Court has held that a defendant's flight is admissible as evidence of a consciousness of guilt. **States v. State**, 88 So. 3d 749, 757 (Miss. 2012). However, the

admission of evidence and instruction of the jury on flight is permitted only when (1) the flight is unexplained, and (2) the circumstance of flight has considerable probative value of guilt or guilty knowledge. *Id.* at 758; *Austin v. State*, 748 So. 2d 186, 194 (Miss. 2001). Flight must be "highly probative" to the facts of the case to warrant a flight instruction. *Fuselier v. State*, 702 So. 2d 388, 390 (Miss. 1997). For example, in *States*, evidence of the defendant's trip to Miami after the crime was inadmissible because evidence showed he went to Miami to see his girlfriend; thus, his flight was explained and not especially probative of his guilt of the crime. *States*, 88 So. 3d at 758. In *Shumpert v. State*, 935 So. 2d 962, 970 (Miss. 2006), a flight instruction was proper because nothing showed the defendant's flight from the crime scene to a nearby laundromat was for any reason other than consciousness of guilt.

¶33. We turn to whether Harrell's flight was "unexplained." Harrell argues that, because the evidence showed that he went to Holmes County to dispose of Damico's body, his flight was explained and the flight instruction was improper. The Court of Appeals injected confusion into the issue by finding that Harrell's flight was "not unexplained." That is, the Court of Appeals found that Harrell's flight was *explained* by his disposal of the body. But if, as the Court of Appeals held, Harrell's flight was explained, then it should have held the instruction was improper.

¶34. Resolution of the issue requires examination of the term "unexplained" in the context of flight evidence. It is only when the defendant fled for some reason independent of the crime that the flight is considered to be "explained." *Austin*, 784 So. 2d at 194 (stating that "evidence of flight is inadmissible when independent reasons exist to explain the flight").

17

Evidence that the defendant fled for an independent reason is not probative of guilt and is unduly prejudicial to the defense. *States*, 88 So. 3d at 758. Flight is "unexplained" if there is no explanation for it other than the defendant's guilt or guilty knowledge. *Austin*, 784 So. 2d at 194. Thus, "[e]vidence of flight may be introduced, even where no flight instruction is sought, as long as such evidence is not probative of 'things other than guilt or guilty knowledge of the crime charged.'" *Id.* (quoting *Mack v. State*, 650 So. 2d 1289, 1309 (Miss. 1995)).

¶35. Applying the above tenets, Harrell's flight from Jackson to dispose of the body in Holmes County was unexplained by anything other than guilt or guilty knowledge. Because Harrell's departure from the jurisdiction for the purpose of disposing of the body was probative of guilty knowledge, it was not an independent explanation for his flight, and his flight was "unexplained." Further, the evidence surrounding Harrell's flight was highly probative of guilt or guilty knowledge; Harrell fled to Holmes County to dispose of the body and hide at his mother's house. Therefore, we find no error in the grant of a flight instruction.

## CONCLUSION

¶36. We hold the trial court's failure to instruct the jury as to the elements of the underlying felony of robbery constituted reversible error. We therefore reverse in part the judgments of both the circuit court and the Court of Appeals as to Harrell's capital murder-conviction and remand the case to the Hinds County Circuit Court for retrial on that court. We affirm the judgments of both the Court of Appeals and the trial court of conviction of possession of a firearm by a felon.

¶37.    **AFFIRMED IN PART; REVERSED IN PART; AND REMANDED. COUNT I: CONVICTION OF CAPITAL MURDER, WHILE IN THE COMMISSION OF A ROBBERY, REVERSED AND REMANDED. COUNT II: CONVICTION OF POSSESSION OF A FIREARM BY A FELON AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**DICKINSON AND RANDOLPH, P.JJ., KITCHENS AND KING, JJ., CONCUR. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND PIERCE, J.**

**CHANDLER, JUSTICE, DISSENTING:**

¶38.    The majority holds that applying harmless-error analysis in this case would violate Harrell's right to a jury trial under Article 3, Section 31 of our state constitution. With respect, I disagree. "[C]onstitutional errors alone do not entitle a defendant to automatic reversal." *Goforth v. State*, 70 So. 3d 174, 187 (Miss. 2011). Most constitutional errors, including violations of our state constitution, are subject to review for harmless error. *Id.* This Court correctly held in *Kolberg v. State*, 829 So. 2d 29, 50 (Miss. 2002), that, even if the trial court fails to instruct the jury on the elements of the underlying felony in a capital murder case, the error may be deemed harmless if the Court can say beyond a reasonable doubt that the verdict would have been the same had the jury been properly instructed. Harrell's jury was instructed that, to convict, it had to find that Harrell killed Damico while engaged in the commission of a robbery. Although the elements of robbery were omitted, the facts so overwhelmingly pointed to Harrell's guilt that no rational jury, even if properly instructed, could have acquitted Harrell of capital murder. Given the overwhelming evidence of Harrell's guilt of capital murder, I would find that the instructional error was harmless beyond a reasonable doubt.

19

¶39.   "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Smith v. State*, 986 So. 2d 290, 300 (Miss. 2008) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)). This Court has not hesitated to apply harmless-error analysis to an array of trial errors, including errors in jury instructions and constitutional violations. *See*, *e.g.*, *Avery v. State*, 119 So. 3d 317, 320 (Miss. 2013) (failure to sequester a witness); *Young v. State*, 99 So. 3d 159, 163 (Miss. 2012) (denial of impeachment of hostile witness); *Conners v. State*, 92 So. 3d 676, 684 (Miss. 2012) (Confrontation-Clause violation); *States v. State*, 88 So. 3d 749, 758 (erroneous flight instruction); *White v. State*, 48 So. 3d 454, 458 (Miss. 2010) (admission of hearsay); *Pitchford v. State*, 45 So. 3d 216, 235 (Miss. 2010) (prosecutorial misconduct); *Walton v. State*, 998 So. 2d 971, 976 (Miss. 2008) (admission of statements taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). And we have not declined to apply harmless-error analysis to violations of the defendant's right to a jury trial. Rather, in *Brown v. State*, 995 So. 2d 698, 704 (Miss. 2008), this Court applied harmless-error analysis when the defendant was denied the right to a jury trial by the trial court's failure to submit a sentencing enhancement to the jury.

¶40.   In *Neder v. United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), the United States Supreme Court determined that, when a jury instruction omits an element of the offense, the error is subject to harmless-error review. The Court stated that only a limited class of cases–those involving "structural errors"– demand automatic reversal. *Id.* at 8, 119 S. Ct. 1827. The Court held that, unlike the "complete deprivation of counsel or trial

20

before a biased judge," the omission of an element of the offense from a jury instruction "does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9, 119 S. Ct. 1827 (emphasis in original). Therefore, when a jury instruction omits an element of the offense, the error does not demand automatic reversal, but may be reviewed for harmless error. *Id.* at 15, 119 S. Ct. 1827.

¶41.    In its discussion, the Supreme Court reasoned that "improperly omitting an element from the jury can 'easily be analogized to improperly instructing the jury on an element of the offense, an error which is subject to harmless-error analysis.'" The Court recognized that "[i]n both cases–misdescriptions and omissions–the erroneous instruction precludes the jury from making a finding on the actual element of the offense." *Id.* at 10, 119 S. Ct. 1827 (emphasis in original). The Court distinguished the omission of an element from an error that "vitiates all the jury's findings," which is not subject to harmless-error analysis.[2] *Id.* at 11, 119 S. Ct. 1827. But the Court held that "the absence of a 'complete verdict' on every element of the offense establishes no more than that an improper instruction on an element of the offense violates the Sixth Amendment's jury trial guarantee," and stated that, "[t]he issue here, however, is not whether a jury instruction that omits an element of the offense was error . . . but whether that error is subject to harmless-error analysis." *Id.* at 12, 119 S. Ct. 1827. Based on its prior application of harmless-error analysis in cases where the jury had

---

[2] Under *Neder*, a total failure to instruct the jury on the elements of the crime would vitiate all the jury's findings and would not be subject to harmless-error analysis. Therefore, the majority's fear that this Court would deem such an error harmless is unfounded.

not rendered a complete verdict on every element of the offense, the Court answered that question in the affirmative. *Id.* at 13, 119 S. Ct. 1827.

¶42. In *Kolberg*, this Court adopted *Neder*'s reasoning and held that the failure to instruct the jury on the elements of the underlying felony is subject to harmless-error review. *Kolberg v. State*, 829 So. 2d 29, 50 (Miss. 2002). Kolberg was convicted of capital murder with the underlying felony of child abuse. Kolberg's jury was not instructed on the elements of child abuse. *Id.* at 45. The Court acknowledged that, in prior cases, we had held that this error was automatically reversible. But in light of *Neder*'s application of harmless-error analysis to a case in which the jury instructions had omitted an element of the charged crime, we held that omission of an element does not render the trial fundamentally unfair and does not require automatic reversal. *Kolberg*, 829 So. 2d at 50. After careful consideration of the issue, we stated that:

> [W]e apply a harmless error analysis in this case where the trial court failed to instruct the jury on the underlying felony in this capital murder prosecution. However,—we implore the trial courts to be alert to the need to assure that the jury is adequately instructed on the underlying felony in a capital murder trial. We also acknowledge that our decisions in many cases are "fact-driven" thereby meaning that, even in applying a "harmless error analysis," had the facts in this case been different, the result here certainly could have been different. We make this statement as a caveat in future capital murder prosecutions under the provisions of Miss. Code Ann. § 97-3-19(2)(e)-(f), that should the trial court fail to instruct the jury on the underlying felony, even in applying a "harmless error analysis," this Court may still be compelled, based on the facts and/or the particular underlying felony, to find such failure to be reversible error.

*Kolberg*, 829 So. 2d at 50-51.

¶43. The Court in *Kolberg* found that the instructional error was harmless beyond a reasonable doubt. *Id.* at 51. Kolberg's jury had been instructed that Kolberg was guilty of

22

capital murder if he killed the child victim when engaged in the crime of felonious child abuse. *See* Miss. Code Ann. § 97-3-19(2)(f) (Rev. 2006). But the jury was not instructed on the elements of felonious child abuse, which required "an intentional whipping, striking or otherwise abusing or mutilating of any child 'in such a manner as to cause serious bodily harm.'" ***Kolberg***, 829 So. 2d at 49; Miss. Code Ann. § 97-5-39(2) (Rev. 2006).[3] The evidence was that the child victim had been discovered with massive head trauma after having been in Kolberg's sole custody. ***Kolberg***, 829 So. 2d at 51. The Court found that there was no way that the omission of these elements had affected the outcome of the case, because no reasonable juror could have found other than that Kolberg had inflicted the injuries "in such a manner as to cause serious bodily harm." ***Id.*** Therefore, the Court held that it was clear beyond a reasonable doubt that the instructional error did not contribute to the verdict. ***Id.***

¶44.   While the Court in ***Kolberg*** did not expressly perform a state constitutional analysis, obviously we considered the state right to be coextensive with the federal right concerning this issue. This Court never has held that violations of our state constitution are immune from review for harmless error. Instead we have held that most constitutional errors, including state constitutional errors, may be deemed harmless. ***Goforth***, 70 So. 3d at 186. Certainly, the omission of the elements of robbery from the jury instructions violated Harrell's right to a jury trial guaranteed by Article 3, Section 31 of the Mississippi Constitution. But nothing in our state constitution prevents this Court from determining that, because the error did not

---

[3] The elements of child abuse in Mississippi Code Section 97-5-39(2) were revised effective July 1, 2013. Miss. Code Ann. § 97-5-39(2) (Supp. 2013).

contribute to the verdict beyond a reasonable doubt, the constitutional violation was harmless.

¶45. Certainly, when the jury receives no instruction on the underlying felony in a capital-murder case, the error is a grave one, because the jury has not found every element of the crime beyond a reasonable doubt. *See Shaffer v. State*, 740 So. 2d 273, 282 (Miss. 1998). A court should not lightly undertake the task of harmless-error analysis when the jury did not receive instruction on the elements of the underlying felony. *See Kolberg*, 829 So. 2d at 50-51. Nonetheless, the error should be subject to harmless-error analysis. The United States Supreme Court in *Neder* explained that "where an omitted element is supported by uncontroverted evidence, [the harmless-error] approach reaches an appropriate balance between 'society's interest in punishing the guilty [and] the method by which decisions of guilt are to be made.'" *Neder*, 527 U.S. at 18, 119 S. Ct. at 1838 (quoting *Connecticut v. Johnson*, 460 U.S. 73, 86, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983)). "The harmless-error doctrine . . . 'recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, . . . and promotes public respect for the criminal process by focusing on the underlying fairness of the trial.'" *Neder*, 527 U.S. at 18, 119 S. Ct. at 1838 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)).

¶46. The test for harmless error is whether "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder*, 527 U.S. at 15, 119 S. Ct. at 1837 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). Contrary to the majority's representation, in determining whether the error was

harmless, we do not act as a second jury, but rather "ask[] whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Neder*, 527 U.S. at 19, 119 S. Ct. at 1839. Such evidence might be that the defendant contested the omitted element and presented sufficient evidence to support a contrary finding. *Id.* at 19, 119 S. Ct. at 1838. "If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error . . . it should not find the error harmless." *Id.* But if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," then the error was harmless. *Id.* "[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Id.* at 17, 119 S. Ct. at 1837.

¶47. I now review the omitted elements of robbery and determine whether the record "contains evidence that could rationally lead to a contrary finding with respect to the omitted element," or whether "the omitted element was uncontested and supported by overwhelming evidence." *Neder*, 527 U.S. at 19, 119 S. Ct. at 1839. Mississippi Code Section 97-3-73, defining the crime of robbery, provides: "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery." Miss. Code Ann. § 97-3-73 (Rev. 2006). The elements of robbery include "(1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his

25

person or in his presence." ***Goff v. State***, 14 So. 3d 625, 647 (Miss. 2009). The killing of a human being is capital murder if done "with or without any design to effect death by any person engaged in the commission of the crime of . . . robbery . . . ." Miss. Code Ann. § 97-3-19 (e) (Rev. 2006).

¶48.    The record contains overwhelming evidence that Harrell killed Damico while engaged in the commission of a robbery. Damico was last seen alive when he left with Harrell in the blue Mercury. Later, the blue Mercury was found in Harrell's possession; he had the keys, and the car was within walking distance of Harrell's location. Harrell confessed to Henry Peters that he had killed Damico, had put his body in the trunk, and had driven to Holmes County. Harrell's description of the killing was consistent with the autopsy results. Harrell gave several conflicting statements to the police in which he admitted he was present during the crime. In each of these statements, Harrell stated that Shorty killed Damico and gave him the blue Mercury. There was overwhelming evidence that Harrell took the blue Mercury from Damico with felonious intent and by violence, killing him in the process, and that the elements of robbery were met.

¶49.    The record is devoid of evidence that would rationally support a contrary finding. In fact, Harrell did not contest the element of robbery; his defense largely rested upon the theory that he had killed and robbed Damico in Holmes County, not Hinds County. It is clear beyond a reasonable doubt that a rational jury would have found Harrell guilty of capital murder had it been instructed on the elements of robbery. I can say confidently that the omission of the elements of robbery was harmless beyond a reasonable doubt.

¶50. While it is vital for trial courts to assure the jury is properly instructed on every element of the underlying felony in a capital-murder case, such errors should be subject to harmless-error analysis, because they do not necessarily mean that a trial was fundamentally unfair. *Neder*, 527 U.S. at 9, 119 S. Ct. 1827. Because the error here plainly was harmless beyond a reasonable doubt, a new trial is a waste of time and judicial resources. "'[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Avery v. State*, 119 So. 3d 317 (Miss. 2013) (quoting *Brown v. U.S.*, 411 U.S. 223, 231-232, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973)). While Harrell's trial was not perfect, it was not fundamentally unfair. I respectfully dissent.

¶51. **WALLER, C.J., AND PIERCE, J., JOIN THIS OPINION.**