NOT DESIGNATED FOR PUBLICATION

No. 114,245

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KYLE R. WILLIAMS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER, JR., judge. Opinion filed February 10, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., ARNOLD-BURGER and BRUNS, JJ.


*Per Curiam*: Kyle R. Williams appeals his convictions after a jury trial of two counts of theft. Williams argues he was improperly convicted of two mutually exclusive charges and asks this court to reverse both convictions and remand for a new trial on only one of the charges. Williams also claims the district court erred in refusing to grant a mistrial after a potential juror commented on the honesty of two of the State's witnesses during voir dire and in failing to issue a jury instruction on the lesser included offense of misdemeanor theft. Finally, Williams claims cumulative errors require reversal in this case. For the reasons stated below, we reverse the conviction for felony theft as charged

1

in Count 2 of the amended complaint but otherwise affirm the decisions made by the district court.

## FACTS

In June 2014, Peris Wanjiku drove her 1997 green Honda Accord to go shopping. When she walked out to the parking lot after she was finished, Wanjiku could not find the car. After searching the parking lot for approximately 15 minutes, Wanjiku called the police to report that her car was stolen.

That same afternoon, Detective Bart Evans of the Derby Police Department was patrolling a Derby neighborhood. Evans saw an unfamiliar green Honda Accord backed into the driveway of a home in a neighborhood in which he patrolled frequently; he also observed several people, including Williams, standing around the car. Because he could not see the license plate, Evans parked at a nearby business and waited for the car to leave the driveway. While he was waiting, Evans observed two women drive up to the house in a Chevy Yukon, and then he saw Williams drive the Accord out of the driveway followed by the women in the Yukon. Evans was able to observe the Accord's license plate number and ran a records check, but the Accord had not yet been reported stolen. Evans then watched as Williams parked the Accord on the side of the road and get into the Yukon.

As Evans was driving back toward the police station, he heard a 911 broadcast advising officers to be on the lookout for a stolen green Honda with a license plate number matching the Accord that Evans had just seen. Evans drove back to where the Accord was parked and called for backup. Shortly after Master Police Officer Chad Carson arrived on the scene, the officers saw Williams driving towards them in a vehicle that was pulling a flatbed trailer. Carson stopped the vehicle and placed Williams in custody. Carson conducted a pat down, during which he found several car keys on a key

2

ring in Williams' pocket that appeared to have been shaved down. The officers recognized keys that have been shaved down as a common item used to open a car for which a person does not have a key. One of the keys on the key ring was identified as the spare key to the Accord.

Williams was arrested and interviewed at the Derby police station, where he denied stealing the car. Williams initially was charged with a single count of felony theft under the theory that he unlawfully obtained control over stolen property. The State subsequently amended its complaint to add an alternative count of felony theft alleging that Williams stole the Accord.

At trial, Williams' defense was that he had no knowledge or participation in stealing the Accord but instead simply moved it from his friend's driveway to park it down the street. Williams' girlfriend, Destiny Taylor, testified that they were cleaning up her rental properties when a friend called and told them that a suspicious car had been parked in the driveway of her house. When they got to the house, Williams agreed to move the car and park it down the street. Taylor testified that after Williams moved the car, they went to Williams' parents' house to retrieve a flatbed trailer to finish cleaning out the rental properties.

The jury convicted Williams on both counts of felony theft. At the sentencing hearing, defense counsel argued that the two counts of felony theft were multiplicitous and asked the court to dismiss Count 2. The court ultimately sentenced Williams only on Count 1, imposing a 10-month prison sentence. The court opted not to dismiss Count 2 but rather held it "in abeyance" and did not sentence Williams on that count.

ANALYSIS

1. *Multiplicity*

Williams contends the jury improperly convicted him of two mutually exclusive counts on the same set of facts by returning a guilty verdict on both alternative theories of theft and possessing stolen property. As a remedy, Williams asks this court to reverse both of the convictions and remand for a new trial on only one count. The State argues that Williams was properly charged with two theories of felony theft—in the alternative—and suffered no prejudice because the court entered judgment and imposed a sentence for the conviction on Count 1 but held the conviction on Count 2 in abeyance and did not impose any sentence.

Williams makes his multiplicity argument for the first time on appeal. Generally, an issue not properly preserved in the district court cannot be raised for the first time on appeal. However, there is a recognized exception for issues involving purely legal questions arising on proved or admitted facts that will be finally determinative of a case. *State v. Foster*, 290 Kan. 696, 702, 233 P.3d 265 (2010). Determining whether convictions are mutually exclusive is strictly a question of law, which this court reviews independently without any deference to the district court. See *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014). Because this issue presents a purely legal question and is determinative of Williams' case, this court may address this issue.

K.S.A. 2015 Supp. 21-5801(a) lists five alternative acts that constitute theft. Two of those acts are relevant here:  subsection (a)(1) prohibits obtaining or exerting unauthorized control over property or services, and subsection (a)(4) prohibits obtaining control over stolen property or services knowing the property or services to have been stolen by another. When the evidence might support more than one of the alternative acts,

4

our Supreme Court has held that it is proper for the State to charge the defendant in the alternative:

> "Where there is a question in the mind of the prosecutor as to what the evidence will disclose at trial, the correct procedure is to charge the defendant in the alternative under those subsections of K.S.A. 1979 Supp. 21-3701 [now codified at K.S.A. 2015 Supp. 21-5801] which may possibly be established by the evidence. This may properly be done under Kansas law by charging several counts in the information to provide for every possible contingency in the evidence. By so doing, the jury may properly be instructed on the elements necessary to establish the crime of theft under any of the subsections charged and the defendant will have no basis to complain that he has been prejudiced in his defense." *State v. Saylor*, 228 Kan. 498, 503-04, 618 P.2d 1166 (1980).

Although charged in the alternative, the different theories of theft should be presented to the jury in separate counts. See PIK Crim. 4th 68.090 (recommending that alternative charge instruction not be given, but rather allowing jury to enter verdict upon each alternative; if jury returns guilty verdicts to multiple charges, trial court must accept only the verdict as to the greater charge under doctrine of merger). When the jury examines alternative theories as separate counts, it is possible for the jury to return inconsistent verdicts. When this happens, however, the court may convict the defendant of only one offense. *State v. Blanchette*, 35 Kan. App. 2d 686, 704, 134 P.3d 19 (2006). In that case, the State charged Blanchette with one count of rape and, in the alternative, one count of aggravated indecent liberties with a child. The jury found Blanchette guilty on both counts. At sentencing, the trial court adjudged Blanchette guilty of both offenses but declined to impose the sentence for aggravated indecent liberties with a child because it was an alternative charge. The Court of Appeals held:

> "If a defendant is charged in a complaint or information with alternative counts, the jury is free to enter a verdict on each count. However, the defendant may be convicted of only one offense. *State v. Dixon*, 252 Kan. 39, 49, 843 P.2d 182 (1992); PIK Crim. 3d 68.09-A. Here, the trial court appeared to understand that it could not impose a sentence

5

for each alternative count. Nevertheless, the trial court adjudged Blanchette guilty on both counts, and the journal entry of judgment reflects that Blanchette has been convicted of both crimes. As the State concedes, Blanchette's conviction of aggravated indecent liberties with a child must be reversed." *Blanchette*, 35 Kan. App. 2d at 704.

Here, the State properly charged Williams in the alternative on two separate theories of felony theft. In Count 1, the State charged Williams with unlawfully obtaining control over stolen property; in Count 2 the State charged Williams in the alternative with unlawfully obtaining or exerting unauthorized control over the property. The jury instructions and verdict form were not presented in the alternative, but rather the two alternative theories of felony theft were presented as counts one and two. Following the jury instructions, the jury returned a guilty verdict for both counts.

At Williams' sentencing, the district court judge and the attorneys for the State and defense discussed the inconsistency between the two alternative theories of felony theft. The judge ultimately sentenced Williams only on Count 1 as follows:

> "I find the primary crime that controls the base sentence to be Count 1, a severity 9, nonperson, nondrug felony, placing the defendant in grid box E with a sentencing range of 9, 10 or 11 months in prison. Upon those findings, I sentence the defendant to a term of 10 months in the custody of the Secretary of Corrections."

Although the district court held in abeyance Williams' felony theft conviction as charged in Count 2, the journal entry retained the conviction for both counts. As explained above, however, a defendant may not be convicted of both offenses when the crimes are charged in the alternative. See *Blanchette*, 35 Kan. App. 2d at 704; see also *State v. Garza*, 290 Kan. 1021, 1036, 236 P.3d 501 (2010) ("*Dixon* clearly holds that a defendant cannot be convicted of both offenses when the crimes are charged in the alternative."). The district court understood that Williams could not be punished twice for the same crime, as it did not sentence Williams for Count 2. But the journal entry records

6

the guilty verdict for both offenses; thus, the proper remedy is to set aside the felony conviction in Count 2. Accordingly, we reverse the conviction for felony theft as charged in Count 2 and remand with directions to prepare a corrected journal entry and enter judgment accordingly.

2. *Mistrial*

In his second issue on appeal, Williams argues that the district court erred in denying his request for a mistrial after a potential juror commented on the credibility of two of the State's witnesses. During voir dire, a potential juror said he was a retired Derby police officer and had worked with two of the police officers listed as anticipated witnesses. The potential juror worked with one of the officers for more than 10 years and the other for a few years less. He supervised one of the officers before he retired. When asked by the district court judge whether his relationship with the officers would influence his judgment as a juror on the case, the potential juror stated, "I believe them to be honest" and it "could" influence his judgment. Upon further questioning by the court about whether he would give the officer's testimony more weight than another witness, the potential juror stated, "I have never known them [to] not be honest." The juror was struck for cause.

Defense counsel moved for a mistrial before the end of voir dire, arguing that the potential juror's responses amounted to "testimony in regards to the credibility of the witnesses." Williams argued that the juror's comments necessarily would cause the remaining jurors to believe the police officers more credible when they testified and therefore deprive him of an impartial jury. The district court judge denied the motion for mistrial, noting that during voir dire there "are often responses from jury panelists that in some way or another may be argued somehow taint the panel." The court suggested that these issues are commonly dealt with by the attorneys on voir dire, which was not complete at the time of the motion. Stating that there was no evidence that any prejudice

7

had occurred or tainted the jury panel, the court also indicated that it would consider issuing a limiting instruction at the close of evidence if either party so desired.

K.S.A. 22-3423(1)(c) permits the district court to declare a mistrial if prejudicial conduct occurs during the proceedings that make it impossible for the trial to proceed without injustice. The statute creates a two-step process: (1) The court must determine whether there was some fundamental failure in the proceeding, and if so, (2) it must determine whether it is possible to continue the trial without injustice. *State v. Betancourt*, 299 Kan. 131, 144, 322 P.3d 353 (2014).

On appeal, the district court's denial of a motion for mistrial is reviewed using an abuse of discretion standard. A district court abuses its discretion if its action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, Syl. ¶¶ 2-3, 256 P.3d 801 (2011). The burden of proof is on the party alleging that the court abused its discretion. *State v. Wells*, 289 Kan. 1219, 1226, 221 P.3d 561 (2009).

This court will not find that a district court abused its discretion in denying a mistrial in the absence of substantial prejudice to the defendant. See, *e.g.*, *State v. Harris*, 293 Kan. 798, 816-17, 269 P.3d 820 (2012); *State v. McCorgary*, 224 Kan. 677, 687, 585 P.2d 1024 (1978). Williams alleges that "the jury pool was exposed to prejudicial information" and that those comments were "particularly prejudicial" and "especially meaningful" given the juror's status as a retired police officer and former professional relationship with the witnesses. But the fatal flaw in Williams' argument is that he does not allege, let alone establish, that he suffered any substantial prejudice as a result of the conduct at issue. Williams simply argues that the potential juror's statement "would have

weighed in jurors' minds." This is not a sufficient showing of substantial prejudice. See *Harris*, 293 Kan. at 816-17 (no showing of substantial prejudice where appellant's brief merely "says that the juror's credentials coupled with his statements 'was *likely* to prejudice the jury'").

Williams argues in the alternative that the district court should have taken curative measures to mitigate the prejudicial effect of the potential juror's comments, such as questioning the remaining jurors about their inclination to evaluate the veracity of witnesses based on the opinions voiced by other jury members, or to issue an instruction not to base credibility decisions on the comments made by other jurors. Williams fails to point out that he did not take advantage of the curative options specifically offered to him by the court during trial. In denying the motion for mistrial, the district court judge advised that counsel could address the issue during voir dire and, in addition, indicated that if either party wanted the court to instruct the remaining jurors regarding the potentially prejudicial comments, the court would "certainly consider that appropriate." Yet defense counsel did not mention the alleged prejudicial comments during his voir dire, nor did he request the court to issue a general instruction to the jury pool. Williams may not now argue that the court's failure to instruct the jury is in error. See *Betancourt*, 299 Kan. at 146 ("The defense did not ask for permission to conduct an examination of the jury for prejudice and did not request an instruction directing the jury to disregard unsworn statements by jury members.").

Furthermore, the potential jurors had ample opportunity to express any concerns regarding their ability to be impartial during voir dire, but no juror responded. See *State v. Moore*, 302 Kan. 685, 692, 357 P.3d 275 (2015) ("[D]efense counsel specifically gave the jury pool the opportunity to discuss anything that they thought would prevent them from acting as fair and impartial jurors, but none responded."); see also *State v. Warren*, 302 Kan. 601, 610, 356 P.3d 396 (2015) (no evidence that jury pool was in fact prejudiced where no one in jury pool expressed concern when asked if there was anything

9

the parties or court should know about, and defense counsel did not request individual polling of the jury pool to investigate existence of prejudice).

The district court did not abuse its discretion in denying the motion for mistrial based on the potential juror's comments during voir dire.

3. *Lesser included instruction*

Williams argues that the district court erred by failing to issue a lesser included offense instruction regarding misdemeanor theft. Defense counsel did not request the instruction at trial, nor did counsel object to the lack of a lesser included offense instruction. When a jury instruction error is raised for the first time on appeal, the failure to give a legally and factually appropriate instruction will result in reversal only if the failure was clearly erroneous. K.S.A. 2015 Supp. 22-3414(3). To establish a clearly erroneous instruction error, the defendant must firmly convince the court the jury would have reached a different result without the error. *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012).

The distinction between felony theft and misdemeanor theft under K.S.A. 2015 Supp. 21-5801 is the value of the property:  theft of property with a value of at least $1,000 but less than $25,000 is a felony under subsection (b)(3), whereas theft of property with a value of less than $1,000 is a class A nonperson misdemeanor under subsection (b)(4). Misdemeanor theft is a legally appropriate lesser included offense of felony theft. See *State v. Simmons*, 282 Kan. 728, 742, 148 P.3d 525 (2006).

Under K.S.A. 2015 Supp. 22-3414(3), a district court must instruct the jury on a lesser included offense where there is some evidence that would reasonably justify a conviction of the lesser offense. "[F]or a lesser included offense to be factually appropriate, there must be actual evidence in the record, together with reasonable

inferences to be drawn from that actual evidence, that would reasonably support a conviction for the lesser crime." *State v. Wade*, 295 Kan. 916, 926, 287 P.3d 237 (2012).

Here, there is only evidence to support the finding of felony theft; there is no evidence in the record that the car was valued at less than $1,000. Wanjiku expressly testified that her car was worth at least $1,000 but less than $25,000. She stated that it was in good working order and that she received an insurance payout for more than $1,000 for the vehicle. An owner is qualified to express an opinion as to the value of the items taken. See *State v. Owens*, 248 Kan. 273, 284-85, 807 P.2d 101 (1991).

In contrast, there is no evidence that the jury could have relied upon to find that the car was valued at less than $1,000. Williams did not challenge Wanjiku's testimony regarding the value of the car during the trial, nor did he present independent evidence about the value of the car. Simply put, the misdemeanor theft instruction was not factually appropriate. It is not necessary to give the lesser included instruction where the value of the stolen goods is established to be over the felony limit and where there is no evidence of a value of less than the felony limit. See *State v. Robinson*, 4 Kan. App. 2d 428, 429, 608 P.2d 1014 (1980). Therefore, the district court did not err in failing to give a lesser included offense instruction.

Finally, Williams argues that a heightened standard of review must be applied because the failure to give a lesser included offense instruction implicates his constitutional right to a jury trial. For support, Williams cites a recent Mississippi Supreme Court case, *Harrell v. State*, 134 So. 3d 266 (Miss. 2014). A panel of this court recently dismissed the same issue in *State v. Williams*, No. 108,394, 2015 WL 8174299 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* January 4, 2016, stating the following:

"Williams cites a recent Mississippi Supreme Court case, *Harrell v. State*, 134 So. 3d 266 (Miss. 2014), but we don't find it persuasive for the point Williams is making. In *Harrell*, the trial court instructed the jury on the elements of capital murder but failed to instruct the jury on the elements of the underlying felony. Because the jury had not been instructed on the elements of the underlying felony, it could not have decided whether the defendant was guilty of each and every element of the crime charged, thus violating the defendant's constitutional right to a jury trial. 134 So. 3d at 272-73, 275. Because the deficient instruction violated the defendant's right to a jury trial, the Mississippi Supreme Court held that 'it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element.' 134 So. 3d at 275.

"That's not the case here: Williams' jury was instructed on every element of the crime charged. Moreover, the Kansas Supreme Court has held that the failure to give a lesser-included-offense instruction is subject to clear-error review under the standards we have applied here, not under the harmless-error test applicable for errors of constitutional magnitude. [Citations omitted.]" 2015 WL 8174299, at *12.

Like in *Williams*, we find *Harrell* does not require this court to analyze a constitutional issue with a heightened standard of review. The district court did not err in failing to give a lesser included misdemeanor theft instruction.

4. *Cumulative error*

When a party argues that the cumulative impact of alleged errors is so great that they result in an unfair trial, this court aggregates all errors and, even if those errors individually would be considered harmless, analyzes whether their cumulative effect is so great that they collectively cannot be determined to be harmless. *State v. King*, 297 Kan. 955, 986, 305 P.3d 641 (2013). However, this doctrine does not apply if no error or only one error supports reversal. See *State v. Carter*, 284 Kan. 312, 332, 160 P.3d 457 (2007). Finding that there was only one error in this case, this court need not apply the doctrine here; there was no cumulative error.

Affirmed in part, reversed in part, and remanded with directions to prepare a corrected journal entry vacating the conviction for felony theft as charged in Count 2 and enter judgment accordingly.