NOT DESIGNATED FOR PUBLICATION

No. 111,474

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICKY WINN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Greenwood District Court; JANETTE L. SATTERFIELD, judge. Opinion filed March 25, 2016. Affirmed.

*Evan Freeman*, legal intern and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Joe E. Lee*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY, J., and JOHNSON, S.J.

*Per Curiam*:  Ricky Winn appeals from his jury convictions for possession with the intent to distribute at least 450 grams of marijuana, cultivation of marijuana, and no tax stamp and from his sentences for those offenses. He contends that the district court erred in the following ways:  concluding that the evidence was sufficient to support his cultivation of marijuana conviction; failing to give lesser included offense instructions regarding the quantity of marijuana he possessed with intent to distribute; failing to give a limiting instruction on prior bad act evidence; improperly responding to a jury question;

1

committing cumulative error; and in determining his criminal history. We find no reversible error so we affirm Winn's convictions and sentences.

FACTUAL AND PROCEDURAL BACKGROUND

Based on evidence obtained during the execution of a search warrant, the State charged Ricky Winn with one count each of unlawful possession of at least 450 grams of marijuana with intent to distribute, unlawful cultivation of marijuana, unlawful possession of drug paraphernalia, and no tax stamp. The State dismissed the paraphernalia charge prior to trial.

Testimony at the jury trial indicated that on October 4, 2012, police officers executing a search warrant searched a mobile home in Eureka, Kansas, occupied by Winn and his wife Amber. The warrant authorized officers to search for evidence of the cultivation of marijuana and possession of marijuana with the intent to distribute. As soon as officers entered the home, they smelled a strong odor of raw marijuana. In one room of the home they found numerous leafs, stems, and buds of what appeared to be marijuana being dried on racks and hangers. They also found similar vegetation in bags and containers. The officers, after field testing the vegetation, photographed and seized it. They did not find a tax stamp in the search.

Police also located and seized other items in the Winn home, including: manual scales; detailed drawings of a vegetation plot near a stream; lists of items generally used in cultivating marijuana; empty seed starter plug trays; a lockbox containing handwritten notes describing various types of and characteristics of different marijuana plants, such as "sweet narcotic taste" and "soothing powerful taste," nicknames such as "God bud" and "chocolate chunk," and their prices; a list of the top 10 marijuana strains of the year found in High Times, a publication that covers marijuana-related topics; various fertilizers; seed starter kits; empty labeled marijuana seed packets with business cards from Amsterdam

2

Marijuana Seed Dealers; a grow lamp; and a camera containing digital photos of plants drying in a fashion similar to what the officers found in the home, as well as photos of Winn smoking a hand-rolled cigarette.

At the time of the search, Winn was at a concert with Amber in Wichita. While there he received a call from his brother alerting him that officers were searching his home. Winn immediately returned. Later that same evening, Winn gave a statement to Deputy Gary Boles of the Greenwood County Sheriff's Department. Winn explained that the marijuana officers found in his home was a 1-year supply he intended to use as medication to treat the symptoms of his fibromyalgia. He knew that possessing marijuana was illegal in Kansas. He claimed that the individual who grew the marijuana, whose identity he did not disclose, had given it to him just 1 or 2 days prior to the search. Winn denied that he ever cultivated or sold any marijuana. When asked about Amber's involvement, Winn replied that he "'didn't make her. But it's not like she had a choice.'"

Police had obtained the search warrant based in part on information they obtained from a tip that led them to Danielle Mann. They interviewed her the day before the search. Danielle did not testify at the trial. However, during the investigation following the search, police spoke to Danielle's 21-year-old husband, Jacob Mann. On October 14, 2012, Mann led officers to a remote area where he said Winn had taken him to show him the marijuana plants Winn was growing. The plot was in a wooded area up an embankment from a stream bed. Photos police took at the site showed 12 denuded marijuana plant stalks, or "trunks" as an officer labeled them, from which the leafy vegetation had been cut. It appeared that the marijuana plant branches ("stems"), leaves, and buds had recently been harvested. Officers then pulled the trunks from the ground. Photos depicted discrete cup-shaped clumps at the base of the trunks indicating that the plants originated from seeds initially placed in starter cups.

Mann testified that he had known the Winns for several years. Amber's son was a close friend of his. He testified that in April 2012 he watched Winn "seed" marijuana plants at the Winns' home. Then, in May 2012, he accompanied Winn to the grow plot where Winn replanted the then ankle-high marijuana. Mann said that he went to the site three or four times. During those visits he saw Winn trim tree branches back from the plot to admit more sunlight. He watched Winn take 5-gallon buckets over the embankment down to the creek bed, partially fill the buckets with water that had puddled there, climb back up, and water the plants. Mann said that Winn never complained about any physical problems, but he did ask Mann to help him tend the plants. Mann said he refused because he was afraid to get in trouble. That angered Winn and, according to Mann, they stopped interacting completely. The falling out occurred in June 2012, when the plants were about knee high. Under vigorous cross-examination, Mann admitted that he had never reported Winn's activities to the authorities. Mann denied that he or Danielle had ever claimed they bought the seeds for or were the growers of the marijuana at the site.

A chemist from the lab at the Kansas Bureau of Investigation testified that the loose green leafy vegetation and the vegetation from the various containers were marijuana. The marijuana weighed just over 622 grams. According to testimony at trial, 28 grams is the metric equivalent of an ounce, so the total weight of the marijuana tested and weighed by the chemist was approximately 1.4 pounds.

After the State rested, Winn's counsel gave his opening statement. Counsel expected the defense evidence to show that Winn was incapable of the physical exertions Mann had described, Winn needed all the marijuana the authorities found for personal use to treat his medical condition, Mann was actually the cultivator, and the Manns were framing Winn to remove him from the life of his genetic child born to Danielle.

4

Although Winn did not testify, his witnesses explained that the growing materials police found in the search were necessary to Winn's hobby of home-gardening. They also contended that the rural marijuana growing operation that Mann led police to was controlled by the Manns, who had recently been overheard bragging about the size of their marijuana plants. The witnesses testified that Winn was disabled and physically incapable of the exertions Mann had described.

During Amber's testimony she alluded to the Manns' motive for framing her husband. She said Danielle had agreed to bear a child for the Winns as a surrogate. Danielle impregnated herself with Winn's sperm using a little turkey baster syringe. Once the child was born, however, the Winns were not allowed to be part of the child's life. The reason for the Winns' exclusion was never explained to the jury. After a State objection the defense proffered that domestic differences between the Manns and the Winns supplied the Manns a motive to frame Winn. The trial court said it would permit such evidence but would exclude hearsay. The defense did not pursue the domestic dispute angle any further and did not argue it in closing.

The jury clearly rejected Winn's defenses and found him guilty of possessing at least 450 grams of marijuana with the intent to distribute, cultivating marijuana, and no tax stamp. The trial court denied Winn's motion for a new trial. It then denied Winn's request for a downward dispositional departure to probation but granted a substantial downward durational departure, imposing a controlling 88-month prison sentence (the standard sentence in drug gridblock 2 I). Winn filed this timely appeal.

We will discuss additional facts when they are pertinent to our analysis.

ANALYSIS

THE EVIDENCE WAS SUFFICIENT TO SUSTAIN WINN'S CULTIVATION CONVICTION

In his first issue on appeal, Winn argues that his evidence cast such a "large shadow of doubt" over Mann's credibility that we should deem Mann's testimony regarding Winn's cultivation of marijuana "unbelievable." Because unbelievable evidence would be insufficient to sustain the conviction on that count, he claims we must reverse.

When a defendant in a criminal case challenges the sufficiency of evidence to sustain a conviction, we must review all the evidence in the light most favorable to the prosecution to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). We do not reweigh the evidence, assess the credibility of witnesses, or resolve conflicts in the evidence. *State v. Longoria*, 301 Kan. 489, 533, 343 P.3d 1128 (2015).

Winn relies on *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983), for authority that, contrary to our general standard of review, we can after all reweigh evidence and assess witness credibility in evaluating the sufficiency of the evidence in this special case. In *Matlock*, the court overturned a rape conviction for lack of sufficient evidence to support the victim's version of events. The *Matlock* court found that the victim's uncorroborated claim that her stepfather raped her was so severely undermined and contradicted by the surrounding circumstances, which included the physical evidence, the victim's delayed reporting of the rape, and her admission to her propensity to lie, that it was insufficient to sustain the defendant's conviction. 233 Kan. at 4-6. Winn likens Mann's testimony to that of the victim in *Matlock*.

The State correctly notes that our Supreme Court has described *Matlock*'s holding as "aberrant" and "perhaps the only case of its kind in this state where the Supreme Court

6

directly weighed the evidence and assessed the credibility of the prosecutrix to reverse a conviction for rape." *State v. Brinklow*, 288 Kan. 39, 53, 200 P.3d 1225 (2009); see also *State v. Kettler*, 299 Kan. 448, 470, 325 P.3d 1075 (2014) (citing *Brinklow* in distinguishing *Matlock*). The State also contends that *Matlock* is readily distinguishable because Mann's testimony was at least partly corroborated by the abundance of direct and circumstantial evidence seized in the search of Winn's home and the plot.

Winn cites as examples of Mann's unbelievable testimony his claims that Winn would walk long distances, climb up and down steep embankments, carry heavy buckets of water, and trim high tree branches as part of his marijuana cultivation activities. Winn contends that this testimony is unbelievable because Winn's evidence showed that he "suffers from fibromyalgia that, at times, renders him" physically infirm to the extent that he cannot even get out of bed without help. Winn also highlights his brother's testimony that Mann discussed growing his own marijuana plants. He then points to testimony at the motion for new trial that, after the trial, an ex-girlfriend of Mann claimed that Mann had admitted to her that he lied at trial in "some of" his testimony. What this all boils down to, though, is a claim that the State's key witness' testimony must be unbelievable because Winn and his witnesses say it is. If we reviewed claims like this in a light most favorable to the defendant, Winn could well prevail, as could every defendant who has adduced evidence attacking the credibility of the State's key witness at trial.

In the light most favorable to the State, though, we see that Mann testified that Winn did do the physical things necessary to cultivate marijuana. Moreover, Winn admittedly used marijuana; he had a multitude of materials in his home that circumstantially supported his interest in growing marijuana; he had the equipment, empty seed packages, and starter trays which supported a conclusion that he had done so; he had a map to a remote plot by a creek; the grow plot Mann said Winn had taken him to had only the trunks left from recently harvested marijuana plants; and Winn had nearly 1.4 pounds of raw marijuana without trunks drying out in his home.

7

It is not unusual that there is conflicting evidence in a criminal jury trial. The jury here was free to determine whatever credit it chose to give to the conflicting evidence. See *State v. Kettler*, 299 Kan. 448, 469-72, 325 P.3d 1075 (2014). The evidence in this case, viewed, as we must, in the light most favorable to the State, made it reasonable and not unbelievable for a juror to reject Winn's evidence of innocence and accept the State's evidence of his guilt. We conclude that a rational factfinder could have found Winn guilty beyond a reasonable doubt on this count. *Williams*, 299 Kan. at 525.

THE TRIAL COURT DID NOT COMMIT REVERSIBLE ERROR IN FAILING TO INSTRUCT THE JURY ON LESSER DEGREES OF POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE

Winn next contends he should get a new trial because the district court failed to instruct the jury on all lesser included offenses of possession of marijuana with the intent to distribute. See K.S.A. 2015 Supp. 21-5705(d)(2). The State urges us to either summarily dismiss this issue because Winn invited any error or find it lacks merit.

Here Winn raises his instructional error claim for the first time on appeal. We will only reverse, then, if the failure to give the instruction was clearly erroneous. See K.S.A. 2015 Supp. 22-3415(3) (in the absence of an objection, the court will reverse only if the instructional error was clearly erroneous). Thus, Winn must """firmly convince[]""" us """that the jury would have reached a different verdict had the instruction error not occurred.""" *State v. Barber*, 302 Kan. 367, 377, 353 P.3d 1108 (2015).

We first consider the State's contention that if there was error Winn invited it. The doctrine of invited error precludes a party from inviting an error at trial and then complaining about it on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Generally, that doctrine should be applied only where the record shows that the complaining party affirmatively invited the error. Mere acquiescence is not enough. Compare *State v. Angelo*, 287 Kan. 262, 280, 197 P.3d 337 (2008) (applying invited error

8

doctrine where trial court determined lesser included offense instruction was factually appropriate but acceded to defendant's two requests that instruction not be given), and *State v. Hernandez*, 44 Kan. App. 2d 524, 527-28, 239 P.3d 103 (2010) (finding defendant invited any error by expressly declining trial court's offer to instruct on lesser included offense), *rev. denied* 294 Kan. 945 (2012), with *State v. Soto*, 301 Kan. 969, 983-84, 349 P.3d 1256 (2015) (declining to find invited error where defense counsel merely acquiesced in trial judge's conclusion that instruction on lesser included offense requested by State was not factually appropriate).

The district court here was prepared to instruct the jury only on the charged offense of possession of at least 450 grams of marijuana with the intent to distribute. Winn asked the court to include an instruction on what he contended was the lesser included offense of simple possession of marijuana because, while the quantity possessed was sizable, the defense evidence was that it was all for Winn's personal medicinal use. The State did not object to that request. Although skeptical of Winn's proposition (an issue not now before us), the trial court ultimately instructed the jury on simple possession of marijuana as a lesser included offense.

During that discussion the trial judge asked the State if it wanted to amend the charges to include lesser degrees of possession with the intent to distribute. See K.S.A. 2015 Supp. 21-5705(d)(2). The court pointed out that, logically, possessing the greater weight resulting in the greater severity level offense charged inherently meant that any lesser amounts were also possessed. The State did not opt for such an amendment. At no point, however, did the parties debate the propriety of an instruction or instructions on any other lesser included offenses of possession with the intent to distribute marijuana. The trial court did not ask Winn if he wanted such lesser offense instructions, nor did it propose to give such instructions.

9

We have reviewed the discussion at the instruction conference. The facts here are more akin to the mere acquiescence in *Soto* than the affirmatively invited instructional errors in *Angelo* and *Hernandez*. We reject the State's contention that Winn invited the instructional error he now asserts.

That brings us to Winn's claim that the district court should have *sua sponte* instructed the jury on not just the charged offense of possession with the intent to distribute at least 450 grams of marijuana but less than 30 kilograms—see K.S.A. 2015 Supp. 21-5705(d)(2)(C), a severity level 2 drug offense, but also possession with intent to distribute at least 25 grams but less than 450 grams—see K.S.A. 2015 Supp. 21-5705(d)(2)(B), a severity level 3 drug offense, and, finally, possession with intent to distribute less than 25 grams—see K.S.A. 2015 Supp. 21-5705(d)(2)(A), a severity level 4 drug offense. We note that the district court also instructed the jury, as mandated by the rebuttable presumption in K.S.A. 2015 Supp. 21-5705(e)(1), that "[i]f you find the defendant possessed 450 grams of marijuana, you may infer that the defendant possessed it with the intent to distribute." The obvious difference among the statutory alternatives is the weight of the marijuana the accused possessed. Each alternative, though, requires the drug possessor to have the intent to distribute the drug.

A trial court's obligation to instruct on lesser included offenses arises under K.S.A. 2015 Supp. 22-3414(3). That statute directs that "[i]n cases where there is some evidence which would reasonably justify a conviction of some lesser included crime as provided in subsection (b) of K.S.A. 21-5109, and amendments thereto, the judge shall instruct the jury as to the crime charged and any such lesser included crime." The trial court's duty under this statute is triggered even if such evidence is "weak or inconclusive." *State v. Maestas*, 298 Kan. 765, Syl. ¶ 6, 316 P.3d 724 (2014).

Our Supreme Court has recently reiterated the analytical framework for reviewing claims of instructional error like the one Winn advances here:

10

"When reviewing the failure to give a lesser included instruction, (1) first, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless." *Soto*, 301 Kan. 969, Syl. ¶ 9.

We considered above the first test. Because Winn did not object to the omission of the instructions he now says were required, he must demonstrate clear error in that omission in order to obtain relief.

In the next step under *Soto* we are directed to consider whether the omitted instructions were legally appropriate. A lesser included crime is statutorily defined as "[a] lesser degree of the same crime." K.S.A. 2015 Supp. 21-5109(b)(1). Winn argues that the severity level 3 and 4 felony offenses of possession of lesser quantities of marijuana with the intent to distribute listed under K.S.A. 2015 Supp. 21-5705(d)(2) are each a "lesser degree" of his severity level 2 charge under K.S.A. 2015 Supp. 21-5705(d)(2)(C). Winn points out that they are lesser degrees of the same crime because the only differences among the K.S.A. 2015 Supp. 21-5705(d)(2) offenses concern the quantity of marijuana possessed. Thus, he argues, the district court was required to instruct on those lesser offenses.

In support of his position Winn cites *State v. McCarley*, 287 Kan. 167, 195 P.3d 230 (2008). The *McCarley* court analyzed whether the varying severity levels of aggravated battery under K.S.A. 21-3414(a)(b) (now K.S.A. 2015 Supp. 21-5413[b], [g][2]) were different levels of the same offense. Our Supreme Court concluded that the lower severity degrees 5 and 8 of aggravated battery, despite the differing levels of intent

11

and/or harm involved, were "lesser degrees of the same crime" under the charged severity level 4 aggravated battery. 287 Kan. at 178.

We agree that K.S.A. 2015 Supp. 21-5705(d)(2)(A) and (B) offenses are lesser degrees of the crime of possession of marijuana with the intent to distribute defined in K.S.A. 2015 Supp. 21-5705(d)(2)(C). We note that the classification scheme at issue is similar to the one in K.S.A. 2015 Supp. 21-5801(b) concerning theft. There the severity level of a theft offense depends on the value of the property taken. Lower severity levels of theft are lesser included offenses under the higher severity levels of theft. See, *e.g.*, *State v. Perry*, No. 97,052, 2008 WL 3367544, *4-5 (Kan. App. 2008) (unpublished opinion) (recognizing there are statutory defined degrees of theft based on value that are lesser included offenses of felony theft), *rev. denied* 287 Kan. 768 (2009). K.S.A. 2015 Supp. 21-5705(d)(2) sets out different degrees of the same offense such that possession of a lesser statutorily defined quantity is a lesser included offense in a charge based on a statutorily defined greater quantity.

But even if such lesser offense instructions would have been legally appropriate, Winn's instructional error claim fails at the next step. We must consider whether the omitted instructions would have been factually appropriate. "Even if an instruction is legally appropriate, the instruction *is only required when "'there is some evidence* which would reasonably justify a conviction of [the lesser included offense.]'"' (Emphasis added.) *State v. Brown*, 300 Kan. 565, 585, 331 P.3d 797 (2014) (quoting *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 [2012] [quoting K.S.A. 22-3414(3)])." Put another way, an instruction on a lesser included offense is not required if the jury could not reasonably convict the defendant of the lesser offense based on the evidence presented. *State v. Robinson*, 261 Kan. 865, 883, 934 P.2d 38 (1997). We view the evidence for giving a lesser included offense instruction in the light most favorable to the defendant. *Brown*, 300 Kan. at 585-86. Even considered in the light most favorable to

12

Winn, the evidence did not require the giving of the lesser included offense instructions he claims the trial court erroneously omitted.

Winn maintained in his statement to Deputy Boles that all of the marijuana recovered at his home was for his personal use. He knew possessing marijuana was illegal in Kansas. He said, repeatedly, that he used the marijuana to medicate himself to relieve the symptoms of his fibromyalgia. Winn claimed that the unnamed person who provided him the marijuana "gives it to me every year to smoke it all year, because I can't grow it and I can't buy it." According to the deputy, Winn consistently denied growing marijuana or selling it. Winn just as consistently insisted that all the marijuana was for his personal use. Winn offered no other evidence, though, to rebut the presumption that he intended to distribute from what he possessed. He did not challenge the chemist on the weight of the marijuana seized from his home. Nevertheless, he now argues that because he acknowledged that he would use the marijuana for himself, the jury should have been instructed that it could guess how much of what he possessed he would have smoked and, *e.g.*, if it found he would have smoked more than 172 grams and distributed the rest, it could have found him guilty of a severity level 3 offense.

We disagree. The State proved through the KBI chemist that Winn's marijuana weighed 622 grams, 172 grams more than the "at least 450 grams" required to constitute severity level 2 felony possession with the intent to distribute. K.S.A. 2015 Supp. 21-5705(d)(2)(C). Winn did not challenge that evidence as to weight. Therefore, he did not rebut the presumption that he possessed "at least 450 grams" grams of marijuana with the intent to distribute. The statute does not require that the State prove the possessor's intent to distribute all of the quantity possessed. Winn asks us to read into the statute an element that is not there. We decline. See *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014).

Given the evidence, it was up to the jury to decide if Winn's defense had created reasonable doubt by rebutting the State's claim that Winn presumptively possessed

13

marijuana with the intent to distribute and that the quantity he possessed was at least 450 grams. In light of the defense Winn advanced, *i.e.*, he had absolutely no intent to distribute any of what he possessed, he provided the jury no evidence to rebut the presumption that he intended to distribute some part of what he possessed. We are convinced that the jury could not reasonably have convicted Winn, based on the trial evidence, of any of the lesser offenses on which the jury was not instructed. Winn's "some evidence" only supported a lesser offense instruction on simple possession, in that Winn denied any intent to distribute. The district court instructed the jury on that asserted lesser included offense. See *Robinson*, 261 Kan. at 883.

Finally, even if the lesser included felony instructions were legally and factually appropriate, we would still find the instructional error harmless. Again, we will only reverse a trial court's failure to *sua sponte* instruct on lesser included offenses where "the failure to give the instruction is clearly erroneous." K.S.A. 2015 Supp. 22-3414(3). That standard requires this court to review "the entire record to make a de novo determination of whether it is firmly convinced that the jury would have reached a different verdict had the instructional error not occurred." *State v. Armstrong*, 299 Kan. 405, 433, 324 P.3d 1052 (2014). Put another way, Winn "bears the burden of firmly convincing [this court] that the jury would have convicted him of" possessing some quantity less than 450 grams of marijuana with the intent to distribute. See 299 Kan. at 435. Clearly the jury did not believe Winn. If it had, it would have found him guilty of simple possession. Winn has failed to convince us that had the asserted instructional error not occurred, the jury would have reached a different verdict.

We also reject Winn's assertion that the instructional error claimed here would be structural requiring reversal. Winn's reliance on *Harrell v. State*, 134 So. 3d 266 (Miss. 2014), is misplaced. Winn also argues that we must apply a more stringent constitutional harmless error analysis to his instructional error claims because the failure to instruct he now asserts denied him due process under the federal and Kansas Constitutions.

14

We, as have other panels of this court, reject these arguments. In *State v. Williams*, No. 108,394, 2015 WL 8174299, at \*12 (Kan. App. 2015) (unpublished opinion), Judge Leben explained the reasoning behind that panel's rejection of similar claims:

> "For support, Williams cites a recent Mississippi Supreme Court case, *Harrell v. State*, 134 So. 3d 266 (Miss. 2014), but we don't find it persuasive for the point Williams is making. In *Harrell*, the trial court instructed the jury on the elements of capital murder but failed to instruct the jury on the elements of the underlying felony. Because the jury had not been instructed on the elements of the underlying felony, it could not have decided whether the defendant was guilty of each and every element of the crime charged, thus violating the defendant's constitutional right to a jury trial. 134 So. 3d at 272-73, 275. Because the deficient instruction violated the defendant's right to a jury trial, the Mississippi Supreme Court held that 'it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element.' 134 So. 3d at 275.

> "That's not the case here: Williams' jury was instructed on every element of the crime charged. Moreover, the Kansas Supreme Court has held that the failure to give a lesser-included-offense instruction is subject to clear-error review under the standards we have applied here, not under the harmless-error test applicable for errors of constitutional magnitude. See *State v. Salary*, 301 Kan. 586, 599, 343 P.3d 1165 (2015); *State v. Roeder*, 300 Kan. 901, 937, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015)." *Williams*, 2015 WL 8174299, at \*12.

We agree with Judge Leben's analysis and adopt it as our response to Winn's arguments. Here, unlike in *Harrell*, the trial court instructed the jury on every element of the crime charged. Due process did not require an element instruction on any other offense. Moreover, the entitlement to lesser included offense instructions is statutory. Therefore, because the error Winn asserts is not actually a constitutional error, it is subject to the harmless error analysis we engaged in above.

Thus, we conclude that Winn has failed to demonstrate clear, reversible error in the trial court's failure to instruct the jury on lesser degrees/severity levels of possession of marijuana with intent to distribute.

### THE TRIAL DID NOT COMMIT REVERSIBLE ERROR IN FAILING TO GIVE A LIMITING INSTRUCTION AFTER ADMITTING EVIDENCE OF PRIOR BAD ACTS

Winn's third issue on appeal also involves an allegation of instructional error. He complains the trial court erred in not giving *sua sponte* a limiting instruction concerning the purpose for which the jury could consider two photos of Winn smoking a hand-rolled cigarette. Winn argues that, as the photos showed that he had committed a bad act on another occasion, the court was duty bound to give a limiting instruction under K.S.A. 60-455 even though he did not request it. See *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006). Winn can raise this issue on appeal even without an objection at trial. *State v. Breeden*, 297 Kan. 567, Syl. ¶ 4, 304 P.3d 660 (2013).

Our review of this issue is governed by somewhat different standards than the review we conduct, as we did above, when the claim relates to failure to instruct on lesser included offenses. On this issue we must first determine whether the omitted limiting instruction would have been legally and factually appropriate. *State v. Brown*, 300 Kan. 542, 555, 331 P.3d 781 (2014). If we find error, we then must decide whether we are firmly convinced the jury would have reached a different verdict had the error not occurred. If we are convinced, we will find clear error and reverse. If we are not, we will find the error harmless. On this issue the party claiming error has the burden of establishing prejudice. 300 Kan. at 555. We make this determination based on our independent review of the trial record, without any required deference to the district court. See *Plummer*, 295 Kan. at 161.

Evidence of a prior bad act (another crime or civil wrong) cannot be admitted in a non-sex crime to show a propensity to commit the charged crime. See K.S.A. 2015 Supp. 60-455(a). The evidence at issue consisted of two of several photos printed from a digital memory card found in a camera seized in the search of Winn's home. Most of the photos, as the detective described at trial, "depict vegetation consistent with marijuana being hung" to dry similar to the marijuana found during the search of Winn's home. Also included were two photos the detective described as depicting Winn smoking what appeared to be "a hand rolled cigarette of some kind." When the State moved to admit the photographs of the vegetation, Winn objected that a proper foundation had not been laid. The trial court overruled that objection and admitted those photographs. The court then asked whether the State wanted to admit the photographs of Winn smoking. The State responded that it did not seek to do so "at [that] time."

Nonetheless, during a proceeding out of the jury's presence the next day, the trial court expressed concern that the two photographs, which the court mistakenly recalled being identified as "Winn smoking a joint," could "potentially be construed as 60-455 evidence." Without discussion from either party, the court explained that it would "affirm" its admission of the two photographs, either independent of or to show Winn's intent and knowledge under K.S.A. 60-455(b). Winn did not object to the admission of those photos, nor did he request a limiting instruction. The court did not provide a limiting instruction to the jury.

Because the district court acknowledged that it admitted the photos at least in part as 60-455 evidence, the court was required to provide a limiting instruction. A judge who admits 60-455 evidence "must give a limiting instruction informing the jury of the specific purpose for admission" to avoid error. *Gunby*, 282 Kan. 39, Syl. ¶ 3. We will assume that the giving of such an instruction was both legally and factually appropriate. We now, then, must review the full trial record to determine whether the error was reversible. To reverse the jury's verdict and order a new trial, we must be "firmly

17

convinced the jury would have reached a different verdict had a limiting instruction been given." *Breeden*, 297 Kan. at 584.

Here the K.S.A. 60-455 evidence appeared to show that on another occasion Winn may have been smoking marijuana. Certainly there are times that such evidence could be quite harmful, especially without a limiting instruction. Had Winn defended that he never had and never would possess, let alone use, marijuana we would likely view his reversibility argument in a different light. But here Winn repeatedly acknowledged to Deputy Boles that he had smoked marijuana for some considerable period of time to control the symptoms of his fibromyalgia. A key part of Winn's defense was that he had not just a propensity to but a medical need to smoke marijuana, and that was why he possessed it. Winn does not suggest an example of the prophylactic instruction the trial court should have given. We cannot conceive of one that would have served the purposes of a limiting instruction in these circumstances. We have reviewed the entire record. The photos did not prejudice Winn's defense, they were consistent with it. Winn has failed to firmly convince us that the jury would have reached a different verdict had the court given a limiting instruction regarding the photos. This instructional error was harmless.

## THE TRIAL COURT DID NOT COMMIT REVERSIBLE ERROR BY RESPONDING IN WRITING TO A QUESTION FROM THE JURY

Winn's fourth issue on appeal concerns the procedure the trial court employed when it considered and responded to a written question from the jury during deliberations. The jury asked the meaning of "promotion of growth" as that term was used in the instruction defining the offense of cultivation of marijuana. By agreement of the parties, the court responded in writing. The court's note innocuously referred the jurors back to the instructions and told them to use their common understanding of the terms. Winn raises various complaints in passing but his primary complaint is that the

trial court's delivery of the response to the jury in writing constitutes structural error because it violated his right to a public trial.

This general issue of how a trial court responds to a jury's question is a familiar one in our appellate courts. It typically, as it does here, involves constitutional claims concerning a defendant's rights to be present at every critical stage of trial, to have a public trial, and to have the benefit of an impartial judge, all of which are reviewed de novo. See, *e.g.*, *State v. Bolze-Sann*, 302 Kan. 198, 214-19, 352 P.3d 511 (2015) (citing *State v. Bowen*, 299 Kan. 339, 354, 323 P.3d 853 [2014]; *State v. Verser*, 299 Kan. 776, 787, 326 P.3d 1046 [2014]).

Winn's appellate counsel initially suggests that Winn was not present for the discussion regarding the jury's question and how the response, once determined, would be delivered to the jury. This suggestion is not borne out by the record. In discussing with the parties how to respond to the jury's inquiry, the trial court referred to caselaw concerning this issue. It made a point of noting that Winn was present at this "critical part of the proceedings." The trial judge then asked defense counsel, albeit rather than Winn personally, whether Winn was "okay" with the procedure of sending a written answer to the jury rather than bringing it back into the court. Counsel immediately confirmed that he had checked with Winn and Winn was okay with that approach. This is consistent with the trial court's indication that Winn was present. The court then caused the agreed-upon response to be delivered to the jurors. The claim that Winn was not present at the critical stage where the answer to the question was crafted is without merit.

However, Winn further complains that he was entitled to be present when the jury received the answer to its question, claiming that this, too, was a critical stage of his public trial. Winn essentially contends that the only permissible manner in which to answer a jury question is to do so in court with the defendant, defendant's counsel, and the judge present. Thus, Winn argues that the district court violated his constitutionally

19

protected rights to be present, with counsel, at every critical stage of the trial, to a public trial, and to a trial before the judge. Winn contends that these errors are even more significant and that they constitute structural error requiring reversal.

Our Supreme Court has recently refused to consider a similar structural error claim. In *Bolze-Sann*, the court acknowledged that the United States Supreme Court has categorized the denial of the right to a public trial as structural error given that the right is "so central to the trial framework." 302 Kan. at 218 (quoting in part *Waller v. Georgia*, 467 U.S. 39, 49, 104 S. Ct. 2210, 81 L. Ed. 2d 31 [1984], which held that "'[t]he defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee'"). However, in *Bolze-Sann*, our Supreme Court declined to reach the issue of whether the trial court's written response to the jury's question constituted structural error in that case, reasoning as follows:

> "Bolze-Sann has not met an all-important initial threshold—she has not shown that such structural error actually occurred. We have never characterized a district court's failure to comply with the deliberating jury procedures provided in K.S.A. 22-3420(3) or later statutes as a violation of the constitutional rights to a public trial or an impartial judge. And Bolze-Sann presents no authority supporting her argument in favor of such an extension of our law. Faced with virtually identical arguments in *Verser*, 299 Kan. at 791, and *Bowen*, 299 Kan. at 355-56, we declined to address these arguments; we noted that pressing a point without pertinent authority is akin to failing to brief an issue, which results in a party waiving or abandoning the argument. See *State v. Torres*, 280 Kan. 309, 331, 121 P.3d 429 (2005). We reach the same conclusion in this case." *Bolze-Sann*, 302 Kan. at 218-19.

Winn's argument suffers from the same flaws as those advanced by Bolze-Sann. Other than a creative argument, Winn provides us with no actual authority to show that the trial court's delivery of a written answer to a written jury question is structural error.

20

Accordingly, for the same reasons stated by the Supreme Court above, we decline to address the merits of Winn's structural error argument.

However, we still must consider Winn's claim that the process the trial court employed to answer the question from the jury violated his constitutional right to be present at all critical stages of his public trial. We agree that it did. See *Verser*, 299 Kan. at 788-89 (finding it statutory and constitutional error for the district court to answer a juror's question by note rather than in open court with the defendant present); *State v. King*, 297 Kan. 955, 967, 305 P.3d 641 (2013) (defendant's rights violated when the court communicated with the jury outside of the defendant's presence).

Given that we have found constitutional error, we next determine whether the constitutional error requires reversal or was harmless. See 302 Kan. at 216. Our Supreme Court's precedent provides us guidance on performing that analysis:

> "Under the constitutional harmless error standard, we may declare an error harmless only if"'the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict."' *Verser*, 299 Kan. at 789 (quoting *Ward*, 292 Kan. 541, Syl. ¶ 6); see *Chapman v. California*, 386 U.S. 18, 22-23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (declining to reverse for constitutional errors that do not affect the substantial rights of a party).
> "Several factors help determine whether a violation of this right is harmless beyond a reasonable doubt:  (1) the overall strength of the case against the defendant; (2) whether either party objected to the manner in which the judge handled the communication; (3) whether the judge's communication with the jury 'concerned a critical aspect of the trial or rather involved an innocuous and insignificant matter,' and also how the communication was conveyed to the jury; and (4) the ability of any posttrial remedy to 'mitigate the constitutional error.' *McGinnes*, 266 Kan. at 132-37; see *Herbel*, 296 Kan. at 1111." *Bolze-Sann*, 302 Kan. at 216-17.

Unfortunately for this analysis, Winn's argument in his brief focused on his contention that the error at issue was structural. He does not argue the constitutional harmlessness factors above. He just contends that "[h]armless error should not be applied." The State does urge us to find harmlessness and cites the *Bolze-Sann* analysis criteria for support.

We see from our review of the entire record that the evidence on the tax stamp violation was overwhelming. But the evidence on the other counts, while circumstantially strong in favor of the prosecution, depended considerably on the jury's determinations of Mann's credibility on the cultivation count and Winn's credibility on the intent to distribute count. A reasonable jury could, and did, find Winn guilty on all counts, but the evidence on the cultivation count did not constitute, overall, a strong case against Winn. This first factor is a wash under our harmlessness review and therefore does not favor the State. However, all of the other factors in the analytical framework explained above by the *Bolze-Sann* court clearly weigh in favor of harmlessness, and Winn has not briefed any contention otherwise. See *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 10, 303 P.3d 680 (2013) (issue not briefed on appeal is deemed waived and abandoned).

We conclude that the State has proved beyond a reasonable doubt that the error complained of did not affect the outcome of the trial in light of the entire record, *i.e.*, there is no reasonable possibility that the error at issue contributed to the verdict. See *Verser*, 299 Kan. at 789. The error in delivering a written answer to the jury question rather than reading the answer in open court was harmless.

CUMULATIVE ERROR DID NOT DEPRIVE WINN OF HIS RIGHT TO A FAIR TRIAL

In his fifth issue on appeal, Winn contends that his convictions should be reversed based on the cumulative effect of the trial court's errors. The State responds that the

doctrine of cumulative error does not apply in this case because there were no trial errors to accumulate. Contrary to the State's position, we did find errors.

"Cumulative trial errors, when considered collectively, may require reversal of the defendant's convictions when the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial." *State v. Lewis*, 301 Kan. 349, 384, 344 P.3d 928 (2015). Thus, in assessing the effect of cumulative error we must 'review the entire record and engage in an unlimited review.'" *State v. Williams*, 299 Kan. 1039, 1050, 329 P.3d 420 (2014).

We have found trial court errors in the failure to give a limiting instruction regarding the photos and in responding to the jury's question, each of which we determined was harmless. We have now considered collectively both those errors under the totality of circumstances. We are convinced that those errors did not substantially prejudice Winn, nor did they deny him a fair trial. Although there were errors to accumulate, the cumulative effect of those errors was minimal and did not entitle Winn to a new trial.

THE TRIAL COURT DID NOT ERR BY CLASSIFYING WINN'S THREE PRE-1993 CRIMINAL THREAT CONVICTIONS AS PERSON FELONIES

In his final issue on appeal, Winn contends that the trial court erred in classifying his three pre-Kansas Sentencing Guidelines Act (KSGA) terroristic threat convictions (two in 1985, one in 1991) as adult person felonies for criminal history purposes. The court, without objection from Winn, determined that his criminal history score was A. Winn now contends that those convictions should have been classified as nonperson felonies, making his criminal history score E. Although Winn did not raise this issue at his sentencing, we will consider it because it is essentially a challenge to an illegal sentence under K.S.A. 22-3504(1). A defendant can raise an illegal sentence claim for the

23

first time on appeal. See *State v. Keel*, 302 Kan. 560, 571, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). Winn's claim requires interpretation of the KSGA, which is a question of law subject to unlimited review on appeal. 302 Kan. at 571.

After Winn had filed his brief, our Supreme Court rejected an argument identical to Winn's. In *Keel* the Supreme Court overruled the decision upon which Winn relies, *i.e.*, *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *modified by Supreme Court order* September 19, 2014, *overruled by Keel*, 302 Kan. 251. Prior to the KSGA, which became effective in 1993, the legislature did not classify offenses as person or nonperson. The rule in *Keel* determines how pre-KSGA convictions should be classified to comport with the classification system used in the KSGA. Under *Keel*, a pre-KSGA conviction and/or juvenile adjudication is to be classified as either a person or nonperson offense by comparing the criminal statute under which the prior conviction arose to the comparable post-KSGA criminal statute that was in effect at the time the current crime of conviction was committed. 302 Kan. 560, Syl. ¶¶ 8-9.

Winn's 1985 and 1991 convictions were for "terroristic threat," which were class E felonies. K.S.A. 21-3419, applicable at the times of each conviction—see K.S.A. 21-3419 (Ensley 1988; as amended in 1984), defined a terroristic threat as any threat to

> "(a) Commit violence communicated with intent to terrorize another, or to cause the evacuation of any building, place of assembly or facility of transportation, or in wanton disregard of the risk of causing such terror or evacuation; or

> "(b) adulterate or contaminate any food, beverage, drug or public water supply."

K.S.A. 2015 Supp. 21-5415(a) defines "criminal threat" as any threat to

> "(1) Commit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any

24

building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such fear or evacuation, lock down or disruption in regular, ongoing activities;

"(2) adulterate or contaminate any food, raw agricultural commodity, beverage, drug, animal feed, plant or public water supply; or

"(3) expose any animal in this state to any contagious or infectious disease."

Winn's pre-KSGA crimes are clearly comparable to the post-KSGA person felony offense of criminal threat. The trial court did not err when it classified Winn's pre-KSGA terroristic threat convictions as person felonies.

Affirmed.